IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC SAMUELS, | ) |
| | ) **PUBLISH** |
| Plaintiff, | ) |
| | ) |
| v. | ) **CIVIL ACTION 12-0490-WS-C** |
| | ) |
| MIDLAND FUNDING, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for judgment on the pleadings. (Doc. 12). The parties have filed briefs in support of their respective positions, (Docs. 13, 17, 18, 22), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the complaint, (Doc. 1), the defendant is a debt collector as defined by the Fair Debt Collection Practices Act ("the Act"). Its business model is to purchase small consumer debts in bulk, at deep discount from the nominal debt balances; to initiate informal collection efforts; and to initiate litigation in the state courts of Alabama if informal efforts fail. The information received by the defendant when it purchases in bulk is too limited to establish the validity of the debt, the defendant's ownership of the debt, or a calculation of the balance claimed; the information the defendant possesses, in short, is patently insufficient to support judgment in its favor. The defendant's uniform practice is to make no effort to obtain evidence that could sustain its burden of proof at trial, and the defendant has no intention of obtaining such evidence or of proving its claims at trial. Instead, the defendant files suit with the intention of either obtaining default judgment or settling

with the consumer if he or she responds to the complaint.  The defendant appears at trial only to take default judgment or to pressure unrepresented consumers into settlement, not to prove its case, as it has no evidence with which to do so.  The defendant has adopted this model because it obtains default judgment or settlement in 90% of the lawsuits it files.  In the other 10% of cases, the defendant will appear at trial through counsel but without witnesses or competent evidence, and the trial court will enter judgment in favor of the consumer.

According to the complaint, the defendant followed this pattern with respect to the plaintiff, who denies owing any debt to the defendant.  The defendant filed suit after supposedly purchasing the debt as part of a bulk purchase, but without taking reasonable steps to ensure the validity of the debt and with no intention of obtaining evidence to prove its claim but with the intention to intimidate or coerce the plaintiff into payment or suffering default judgment by falsely implying to the plaintiff that it was willing to prove its claim in court.  The defendant maintained this intention throughout the litigation and took no steps to obtain evidence to prove its claim.  The plaintiff retained counsel and appeared at trial.  The defendant's attorney appeared at trial, with no witnesses and no documents to prove the defendant's case.  In particular, and consistent with its business model, the defendant arrived at trial with no evidence to prove:  the plaintiff created the alleged debt; the date on which the plaintiff defaulted; how the plaintiff defaulted; the date the debt was charged off; the amount due on that date; the amount of principal claimed; the amount of interest claimed; or the amount of other items claimed.  On the day of trial, the court entered judgment in favor of the plaintiff herein.

Count One of the complaint charges that the defendant's conduct violated several provisions of the Act.  Counts Two through Six set forth state law causes of action for invasion of privacy; negligent/wanton/intentional hiring, supervision, etc.; negligence/wantonness/intentional conduct; malicious prosecution; and abuse of process.  The defendant seeks dismissal of all claims.

## DISCUSSION

"Judgment on the  pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. District Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010) (internal quotes omitted).  "We accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id*.  The Court "need not accept as true, however, conclusory legal allegations made in the complaint." *Andrx Pharmaceuticals, Inc. v. Elan Corp*., 421 F.3d 1227, 1230 n.1 (11th Cir. 2005).

The basis of the defendant's motion is that the complaint fails to state a claim. (Doc. 12).  The parties agree that "[a] motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc*., 528 F.3d 413, 418 (5th Cir. 2008).

## I.  Fair Debt Collection Practices Act.

"It is the purpose of this subchapter to eliminate abusive debt collection practices …." 15 U.S.C. § 1692(e).  This purpose is played out in subsequent provisions identifying particular abusive practices, several of which are invoked by the complaint.

"The threat to take any action that … is not intended to be taken" is a violation of the Act.  15 U.S.C. § 1692e(5).  Likewise, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" is a violation of the Act.  *Id*. § 1692e(10).   The complaint alleges that the defendant violated these provisions by bringing and maintaining the collection suit, because the defendant thereby threatened and represented that it intended to prove the claims asserted in the lawsuit, even though it did not intend to do but intended instead to coerce payment or obtain default judgment.  (Doc. 1 at 21-22).

"The false representation of … the character, amount, or legal status of any debt" is a violation of the Act.  15 U.S.C. § 1692e(2)(A).  The complaint alleges that

the defendant violated this provision by filing and maintaining a complaint alleging the character, amount and legal status of the plaintiff's alleged debt despite the plaintiff's denial of the same and despite having neither knowledge of the same nor any intention of taking any reasonable steps to support these allegations or substantiate its causes of action.  (Doc. 1 at 22).

"The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" is a violation of the Act.  15 U.S.C. § 1692f(1).  The complaint alleges that the defendant violated this provision by maintaining its allegation of a written agreement to pay despite the plaintiff's denial of such an agreement and despite having neither knowledge of such an agreement nor any intention of taking any reasonable steps to prove the existence of such an agreement.  (Doc. 1 at 22).

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The complaint alleges that the defendant violated this provision by filing suit with no intention to prove its case but only to use the suit to coerce payment or obtain default judgment.  (Doc. 1 at 22).

Finally, but without citation to the Act, the complaint alleges that the defendant's conduct in filing suit to obtain default judgment or coerce payment "was an action taken by Defendant in bad faith, with reckless disregard of Plaintiff, and was an abuse of process."  (Doc. 1 at 23).

The defendant asserts four arguments in opposition to the plaintiff's federal claim:  (1) the plaintiff's theory is not legally recognized; (2) the factual basis for the claim is contradicted by the complaint's allegations; (3) the defendant's alleged misrepresentation was not material; and (4) the plaintiff's claim under the Act was a compulsory counterclaim in the state court litigation, which was lost by the plaintiff's failure to assert it therein.  (Doc. 13 at 4).

### A.  Validity of the Plaintiff's Theory.

The defendant first argues that the Act does not govern conduct in connection with a state court collection action.  (Doc. 13 at 6-8.)  The Supreme Court, however, has held that "[t]he Act does apply to lawyers engaged in [collection] litigation." *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).  The Eleventh Circuit has echoed that "the Supreme Court [in *Heintz*] has held that initiation of legal proceedings by a creditor *can* constitute a debt collection activity."  *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 n.15 (11th Cir. 2010) (emphasis in original).[1]

The defendant does not acknowledge these authorities, pointing instead to a sister court's statement that "[t]here is no indication whatsoever that Congress considered state law legal remedies to be 'abusive'" for purposes of the Act. *McKnight v. Benitez*, 176 F. Supp. 2d 1301, 1305 (M.D. Fla. 2001).  Of course, the plaintiff herein does not contend that the legal remedy of a collection action is of itself abusive.  At any rate, in light of *Heintz* and *LeBlanc*, any suggestion in *McKnight* that the Act does not in any measure extend to conduct in connection with a collection action cannot be credited.[2]

The defendant next argues that "[f]ederal courts have refused to make the federal judiciary a policeman of state court litigation by extending the FDCPA to cover litigation strategy in state court collection actions."  (Doc. 13 at 8.)  It relies on a number of cases that have rejected claims based on the debt collector's conduct in connection with a collection action.  (*Id*. at 8-12, 15; Doc. 22.)

---

[1] *See also Glazer v. Chase Home Finance, LLC*, ___ F.3d ___, 2013 WL 141699 at *6 (6th Cir. 2013) ("Nothing in these provisions [of the Act] cabins their applicability to collection efforts not legal in nature."); *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th Cir. 2007) ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA.").

[2] Any such suggestion in *McKnight* is dicta, as "the holding of *McKnight* [is] that a legal action does not constitute an 'initial communication' within the meaning of [Section 1692g of] the FDCPA."  *Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003).

Before considering the defendant's cases, it is important to articulate the theory underlying the instant complaint, so that its theory may be compared with those involved in the defendant's cases.  The plaintiff's theory, at its core, is that a defendant's filing and prosecution of a collection action, while knowing that it lacks evidence to prove its claim and knowing that it will not obtain or even try to obtain such evidence – such that it knows it cannot ever prove its claim and possesses no intention of doing so – violates the Act.  Most of the defendant's proffered cases address different allegations and so do not answer the question presented.

In *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006), the plaintiff alleged only that the defendants filed suit "without *having on hand at the time of filing* the means to prove the complaint."  *Id.* at 327-28 (emphasis in original).[3] Similarly, in *Deere v. Javitch, Block & Rathbone, LLP*, 413 F. Supp. 2d 886 (S.D. Ohio 2006), the plaintiff "essentially allege[d] that more of a paper trail should have been in the lawyers' hands or attached to the complaint."  *Id.* at 891.[4]  In *Davis v. NCO Portfolio Management, Inc.*, 2006 WL 290491 (S.D. Ohio 2006), decided the same day as *Deere* and by the same judge, the plaintiff likewise "essentially allege[d] that more of a paper trail should have been in the lawyers' hands or attached to the complaint."  *Id.* at *3.[5]  In *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008), the same judge ruled the defendant "did not violate the FDCPA

---

[3] The *Harvey* Court refused to consider a theory, advanced for the first time on appeal, that the defendants "filed the complaint without the means of *ever being able to obtain sufficient proof* of the debt-collection action" or that they chose not to obtain such proof as part of a business model similar to that of the defendant here.  453 F.3d at 328-29, 333 (emphasis in original).

[4] The plaintiff's theory, as described in the opinion, arguably could be read more expansively than this, *see* 413 F. Supp. 2d at 890, but the *Deere* Court elected to confine it as quoted in text.  *See also Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1022 (S.D. Ohio 2007) (the *Deere* judge confirms that *Deere* "involved essentially identical allegations to those at issue in *Harvey*").

[5] *Davis* "involves almost identical facts and claims" as *Deere*, 413 F. Supp. 2d at 889-90, and its analysis is an essentially verbatim repetition of that in *Deere*.

by not having documentation in hand supporting its claim when it filed suit." *Id*. at 824.[6]  As noted above, the plaintiff herein does not base his claim on the mere lack of supporting evidence at the moment suit was filed.

In *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470 (7th Cir. 2007), the plaintiff alleged only that the complaint's "description of the contracts among [various entities] was not clear enough to enable an unsophisticated consumer … to understand the relationship" among the entities.  *Id*. at 472.  In *Krawczyk v. Centurion Capital Corp*., 2009 WL 395458 (N.D. Ill. 2009), the plaintiff alleged only "procedural defects in the state court complaint."  *Id*. at *9.  In *Washington v. North Star Capital Acquisition, LLC*, 2008 WL 4280139 (N.D. Ill. 2008), the plaintiff alleged only that the state collection complaint was fatally defective because it did not attach the assignment of debt, as required by Illinois law.  *Id*. at *2.  And *Waters v. Kream*, 770 F. Supp. 2d 434 (D. Mass. 2011), by the defendant's own description, involved only an attempt to settle a collection action.  (Doc. 13 at 11).  As noted above, the plaintiff herein does not base his claim on the clarity of the complaint, or on its failure to comply with state procedural niceties, or on settlement overtures.

The defendant's final authority is *Bandy v. Midland Funding, LLC*, 2013 WL 210730 (S.D. Ala. 2013).  That case, filed in this District the same day as this case, by the same attorney as in this case against the same defendant as in this case, involves essentially identical allegations.  The *Bandy* Court reached the result the defendant favors, *id*. at *9, but its reasoning does not persuade this Court to follow it.

First, the *Bandy* Court found the plaintiff's claims "analogous to those alleged and rejected in *Harvey*."  2013 WL 210730 at *9.  As discussed above, the *Harvey* plaintiff "alleged only that, at the time of filing, [the defendants] did not have the

---

[6]  The defendant emphasizes that, in his brief, the *Hill* plaintiff argued the defendant "would never have been able to prove the debt."  574 F. Supp. 2d at 824.  The complaint in *Hill*, however, alleged only that the defendant filed suit without knowing if the plaintiff was in fact the debtor or whether the real debtor lived at the plaintiff's address.  *Id*. at 822.  The *Hill* Court thus limited the claim to the *Harvey* paradigm.  *Id*. at 824.

means of proving their debt-collection claim." 453 F.3d at 328.  This case, unlike *Harvey*, is not centered on the defendant's inability to prove its claim on the day it filed suit, but on its fixed intention not to prove its claim and its knowledge that it would never be able to prove its claim, since it had no evidence and deliberately elected to seek none.[7]

The *Bandy* Court also found the plaintiff's claim "analogous to those alleged and rejected in … *Deere*." 2013 WL 210730 at *9.  As noted previously, the *Deere* Court distilled the plaintiff's allegation as being "that more of a paper trail should have been in the lawyers' hands or attached to the complaint." 413 F. Supp. 2d at 891.[8]  As noted previously, such a challenge is of a piece with *Harvey*, and it is not the theory on which the plaintiff herein relies.

In its brief opposing the defendants' motion to dismiss, the *Deere* plaintiff advanced a "'new theory' of liability," based on the defendant's practice of buying debt in bulk at deep discount, receiving minimal summary information on each account, filing suit with no additional information, and obtaining default judgment where possible while voluntarily dismissing cases in which the debtor appears and asks for documentation, based on the economics of pursuing challenged claims. 413 F. Supp. 2d at 890.  The plaintiff argued that filing suit "intend[ing] to dismiss if the defendant debtor requests verification of the original debt" should be actionable under Sections 1692e(10) and 1692f, but the Court responded (after noting this theory was not alleged in the complaint) that "filing a lawsuit, supported by the client's affidavit

---

[7] The *Bandy* Court boldfaced the *Harvey* Court's description of the plaintiff's alternative theory, first advanced on appeal, and characterized *Harvey* as holding that "such allegations failed to state a claim." 2013 WL 210730 at *6.  The *Bandy* Court may thus have understood that the *Harvey* Court addressed this alternative theory.  As discussed in note 3, *supra*, the *Harvey* Court did not do so.  *See also* 453 F.3d at 333 ("We wish to reiterate that we are not passing on the viability of the facts alleged by Harvey for the first time on appeal.").

[8] This construction follows naturally from the complaint's allegation that the defendants violated the Act "by filing a lawsuit to collect a purported debt without the means of proving" the elements of the claim, 413 F. Supp. 2d at 888, and it is the same construction placed on the same words by the *Harvey* Court.  453 F.3d at 328.

attesting to the existence and amount of a debt, is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable." *Id*. at 890-91. The only explanation offered for this conclusion was that "[a] defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery." *Id*.

The Court does not find this portion of *Deere* persuasive for at least the following reasons.  First, it appears to be dicta, since it addresses a theory not advanced in the pleadings and since the *Deere* Court characterized the plaintiff's claim as limited to the *Harvey* paradigm.  Second, the *Deere* plaintiff did not clearly allege that the defendants proceeded with knowledge they could not prove their case and with no intention of doing so.  Third, there is no indication that the defendant herein attached to the state complaint an affidavit so as to provide evidence reflecting the existence and amount of debt, as the *Deere* Court deemed important.  Fourth, it is unclear and unexplained why a debtor's eventual ability to ferret out the debt collector's lack of evidence would prevent the debt collector's antecedent filing and maintenance of a claim, which it at all times knows it can never prove, from violating the Act.  Fifth, a debtor's ability to engage in discovery and dispositive motion practice (on which ability the *Deere* Court's opinion rests) appears to be rather restricted – at least in the district courts of Alabama, where the underlying collection action was filed.[9]  The *Bandy* Court quoted *Deere* and cases discussing it, but it did not address or allay any of the Court's concerns expressed above.

Finally, the *Bandy* Court, 2013 WL 210730 at *9, found the plaintiff's claims analogous to those asserted in *Donatelli v. Warmbrodt*, 2011 WL 2580442 (W.D. Pa. 2011).  The *Bandy* Court did not examine or explain *Donatelli* but only quoted from

---

[9] Discovery in district court "shall be available only in the discretion of the court on motion of the party seeking such discovery or by agreement of the parties."  Ala. R. Civ. P. 26(dc).  "Rule 12 applies in the district courts, except that … the provisions for the assertion of certain defenses by motion at the option of the pleader in Rule 12 are deleted."  *Id*. Rule 12(dc).

it, 2013 WL 210730 at *8-9, so the Court turns to that decision.  In *Donatelli*, the plaintiff alleged that the defendant filed the collection action without supporting evidence and that its intention was not to prosecute the case but to procure a default judgment.  *Id*. at *3.[10]  The Court rejected the claim to the extent based on the absence of supporting evidence, on the familiar ground that the filing of suit without the immediate means to prove the claim does not violate the Act.  *Id*. at *4, *7.  Again, this is not the theory advanced by the plaintiff herein.  The *Donatelli* Court also rejected the plaintiff's claim to the extent based on an alleged lack of intention to prosecute the collection action, on the grounds that "the essence of this argument was rejected in *Deere*."  2011 WL 2580442 at *7.  The *Donatelli* Court provided no further basis for its ruling, which is thus only as strong as *Deere*.  As discussed above, the Court does not find *Deere* persuasive.  It therefore cannot find *Donatelli* persuasive, either.[11]

---

[10] It is not clear from the *Donatelli* Court's description of the collection action proceedings how those proceedings were concluded.  2011 WL 2580442 at *2.

[11] The *Bandy* Court also cited *Hickman v. Alpine Asset Management Group, LLC*, 2012 WL 4062694 (W.D. Mo. 2012), and *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766 (E.D.N.C. 2011), but without finding them analogous.  2013 WL 210730 at *9. The Court concurs.

The Court in *Hickman* addressed allegations of filing suit with inadequate investigation, with inadequate evidence and with false affidavits, and of attempting to collect amounts in excess of the principal balance without an express agreement.  2012 WL 4062694 at *3 *5, *6.  Although the plaintiff alleged the defendant "never intended nor could corroborate and prove its case against Hickman," *id*. at *1; *accord id*. at *3, the Court treated that allegation as limited to one, as in *Harvey*, implicating only an inability to prove up the claim on the day suit was filed.  *Id*. at *4.

The Court in *Johnson* construed the plaintiff's allegations as "limited to the failure of the FDCPA Defendants to provide supporting documentation of the debt and related fees and 'handling the foreclosure proceedings.'"  867 F. Supp. 2d at 781.  While the complaint alleged the defendants' failure to present evidence at the foreclosure hearing to prove the owner and holder of the note, *id*. at 773, there was no allegation that the defendants could not obtain such evidence or that they never intended to do so.

In opposition to the defendant's cases, the plaintiff relies on *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293 (N.D. Ga. 2010).  (Doc. 17 at 20-22).[12] In *Kuria*, the plaintiff alleged violations of Sections 1692e(2)(A), 1692e(10), and 1692f.  The Court construed the plaintiff's claim as being that the defendant, consistent with its pattern and practice, "sued him on a debt that he did not owe and that [it] could not ever prove," and that the defendant filed suit "intending to either obtain a default judgment or coerce him into a settlement."  752 F. Supp. 2d at 1302, 1303.  The *Kuria* Court concluded that such allegations are not captured by *Harvey* and that the plaintiff's claims under these provisions of the Act stated a claim for relief.  *Id*.

The *Bandy* Court distinguished *Kuria* on the grounds that, in *Kuria*, the defendant allegedly was "*incapable*" of proving its claim, while the defendant in *Bandy* merely "*chose*" not to prove its claim.  2013 WL 210730 at *8 (emphasis in original).  The significance of this distinction is unclear.  A debt collector that chooses not to obtain evidence with which to prove its claim is just as "incapable" of proving the claim as is a debt collector that attempts to obtain such evidence but fails because no such evidence exists.  And the conduct of the former would appear more culpable, since such a debt collector knows absolutely from the outset that it cannot prove its claim, while a debt collector looking for evidence may believe it will succeed.  The Court does not find the *Bandy* Court's proffered distinction to be persuasive.

The defendant identifies a different distinction:  in *Kuria*, the defendant voluntarily dismissed when the plaintiff requested discovery, 752 F. Supp. 2d at 1296, while in this case the defendant appeared through counsel at trial.  (Doc. 13 at 13).

---

[12] The plaintiff also cites *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016 (S.D. Ohio 2007), but that case survived dismissal because it was alleged that the defendant knew, or should have known, that an affidavit attached to the complaint contained false statements.  *Id*. at 1022-23.  The plaintiff herein points to no express false statement.

The plaintiff also cites *Simmons v. Portfolio Recovery Associates, LLC*, 2012 WL 222935 (E.D. Tenn. 2012), but that case as well appears to have hinged on the submission of a knowingly false affidavit.  *Id*. at **4-5.

The defendant does not explain how proceeding to trial with full knowledge it would lose – essentially doubling down on its bid to coerce settlement – could preclude a claim that *Kuria* makes available when the defendant folds before trial once its bluff is called.  Perhaps the defendant believes its conduct draws into question what its true intentions were, but that is a factual issue that cannot be resolved on a motion for judgment on the pleadings.

Although the parties devote much of their attention to what other cases have decided, the discussion above reflects that only two cases have involved allegations truly comparable to those asserted herein, and those cases reached contrary conclusions regarding the viability of such a claim.  As discussed above, the Court does not find the *Bandy* Court's reasoning persuasive, but it is not clear that the *Kuria* Court's rationale is stronger.

To break this stalemate, the defendant argues that state law already provides remedies for abusive litigation, so that a federal cause of action under the Act would be superfluous.  (Doc. 13 at 16).  But many states provide direct protection from various debt collection practices, yet conduct violating these state laws may also violate the Act.  *E.g., LeBlanc*, 601 F.3d at 1191-92 & 1191 n.11 (failure to register in violation of state collection practices law could support a federal claim under Section 1692e(5)).  The single appellate decision to which the defendant refers concluded only that the Act "was not meant to convert *every* violation of a state debt collection law into a federal violation."  *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004) (emphasis added).  This unremarkable statement is hardly a holding that whatever violates state law does not violate the Act.  In light of *LeBlanc* (which quoted *Carlson*), such a view is unsustainable in this Circuit.[13]

---

[13] The defendant also cites *McKnight* for the proposition that the Act need not be applied to state collection lawsuits because, "[a]fter all, if state lawsuits are used in an abusive manner, protection already exists in the court where the action is brought."  176 F. Supp. 2d at 1305.  *Bandy* is the only decision known to have quoted *McKnight* for this proposition.  2013 WL 210730 at *9.  Without identification of an underlying legal principle

Next, the defendant objects that the plaintiff is merely quibbling with its "litigation strategy:  what evidence it considered sufficient, what evidence it intended to present, and whether it intended to call any particular witnesses." (Doc. 13 at 15). Allowing such a claim, it declares, would expose debt collectors to liability under the Act if "that evidence did not meet some subjective standard [the plaintiff] has yet to articulate." (*Id*. at 2).  The argument misstates the plaintiff's claim.  The plaintiff does not allege that the defendant possessed evidence that it believed, or could have believed, would establish every element of its cause of action; instead, the plaintiff asserts the defendant knew it had no evidence with which to establish its claim.  And he does not allege the defendant brought evidence and witnesses to trial that the trial judge could have credited; instead, he alleges that the defendant appeared with "no witnesses and no competent or admissible evidence." (Doc. 1 at 20).  The only "litigation strategy" the plaintiff has identified is that of pursuing litigation with no evidence and hoping the collection defendant is cowed into default or payment before its game is exposed.

Finally, the defendant argues that permitting the plaintiff's claim would place it and other debt collectors in an untenable position.  If, upon discovering it cannot sustain its claim, a debt collector voluntarily dismisses, it will face suit under the Act but, if it continues to pursue the collection action, it will face suit under the Alabama Litigation Accountability Act and its various analogues. According to the defendant, accepting the plaintiff's theory "would convert every collection lawsuit loss into an automatic FDCPA violation." (Doc. 13 at 17-18).

---

and application of that principle specifically to the text and purpose of the Act, the Court cannot accept *McKnight*'s proposition at face value.

The defendant's final two cases are no more persuasive.  In *Jenkins v. Centurion Capital Corp.*, 2009 WL 3414248 (N.D. Ill. 2009), the Court offered no authority or reasoning beyond the plaintiff's failure to offer her own.  *Id*. at *5.  In *Rosales v. Unifund CCR Partners*, 2008 WL 5156681 (N.D. Ill 2008), the Court quoted *Carlson* but did not acknowledge *LeBlanc* or any other case addressing *Carlson*'s limits.  *Id*. at *2.

This argument as well rests on a false premise.  The plaintiff's claim is not that the defendant filed suit expecting in good faith to prove its claim and only later discovered it could not do so; rather, the plaintiff alleges that the defendant filed suit with full knowledge it would not (and therefore could not) prove its claim.  Accepting the plaintiff's theory would not lead to liability in other situations, and the defendant's parade of horribles is but a phantasm.

The Court does not by this order definitively resolve whether the Act provides the plaintiff a cause of action.  Instead, the Court rules only that the defendant has not demonstrated that no such cause of action exists.  The Court has and expresses no opinion whether the defendant could have done so by presenting different or stronger arguments, though the defendant remains free to try on motion for summary judgment.

### B.  Internal Contradiction.

As noted, the complaint alleges that the defendant "represented to Plaintiff … that it intended to prove its claims," but its "actual intention was not to prove its case."  (Doc. 1 at 21).  The defendant points out that the state court order recites that judgment was entered in favor of the plaintiff herein "[a]fter hearing of stipulate[d] facts."  (Doc. 13, Exhibit A).[14]  The defendant asserts that "this Court need not accept Samuels's allegation that Midland had no intention to try its case when, in fact, the complaint reveals that Midland did try its case," and the defendant concludes that "this inherent contradiction" requires dismissal for failure to state a claim.  (Doc. 13 at 5-6).

---

[14]  The plaintiff does not dispute the defendant's position that the order may be considered on motion for judgment on the pleadings.  *See generally Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed[, that is,] the authenticity of the document is not challenged.").

There are at least two fatal difficulties with the defendant's argument. First, the key allegation of the complaint is that the defendant did not intend to *prove* its case, not that it did not intend to *try* its case.[15] Indeed, the complaint alleges that the defendant's modus operandi is to "proceed to trial" if the debtor appears but refuses to work something out, (Doc. 1 at 12), which is exactly what transpired in this case.[16] The mere fact that the parties proceeded to trial does not undermine, much less contradict, the plaintiff's position that the defendant had no intention of proving its case at trial.

Second, the quoted language from the state court order does not of itself establish that the defendant attempted to prove or even try its case; for all that appears from this opaque language, the defendant merely "stipulated" that it could not prove its claim.

## C.  Materiality.

The defendant argues that an actionable misrepresentation must be material and that its implied representation that it intended to prove its claims was not material. (Doc. 13 at 18-20).

At least three appellate courts have agreed that materiality is an element of claims under the Act based on a false or misleading representation. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033-34 (9th Cir. 2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 757 (7th Cir. 2009). The plaintiff posits that materiality cannot be an element of such a claim because the Act does not expressly articulate such a

---

[15] The defendant realizes this, since it describes "Samuels's central theory of liability [a]s that Midland's actual intention was not to prove its case …." (Doc. 13 at 4 (internal quotes omitted)).

[16] The complaint does allege that, at the time it files suit, the defendant "has no intention of taking its claims to trial." (Doc. 1 at 7). That threshold intent morphs into an intent to proceed to trial (but not an intent to prove its claim) once the defendant appears but refuses to settle up. (*Id*. at 12).

requirement.  (Doc. 17 at 27).  As the *Hahn* Court noted, "[m]ateriality is an ordinary element of any federal claim based on a false or misleading statement," 557 F.3d at 757, and the plaintiff offers no reason the general rule should not obtain under the Act as well.  For present purposes, the Court assumes that materiality is an element of the plaintiff's claims, to the extent they are based on an alleged false or misleading representation.

The defendant argues its alleged misrepresentation (that it intended to prove its claims) was not material because the plaintiff does not allege he would have done anything differently had he known the truth.  Indeed, the defendant argues the plaintiff was affirmatively aided by the misrepresentation, in that it prompted him to retain counsel, which in turn led to his prevailing in the action.  (Doc. 13 at 20; Doc. 18 at 6-7).  That is, the defendant assumes that materiality is measured by the actual effect of the representation on the plaintiff rather than (as is generally the test) by its potential effect on a hypothetical person.[17]  As the defendant offers no authority or explanation for such an idiosyncratic measure of materiality under the Act, the Court rejects it.

The relevant hypothetical person for materiality purposes under the Act would appear to be the "least sophisticated consumer."  *See Donohue*, 592 F.3d at 1033 (court evaluates misrepresentation claims based on "whether the least sophisticated debtor would likely be misled by a communication"); *Hahn*, 557 F.3d at 758 (similar); *Miller*, 561 F.3d at 596-97 (statement was not material when "the least-sophisticated consumer" would understand the defendant's language).  The Eleventh

---

[17] *See, e.g., Securities & Exchange Commission v. Goble*, 682 F.3d 934, 943 (11th Cir. 2012) ("This court has said that the test for materiality in the securities fraud context is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action.") (internal quotes omitted);  *United States v. Svete*, 556 F.3d 1157, 1164 (11th Cir. 2009) (en banc) (the Restatement (Second) of Torts "instructs that a matter is material if … a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or … the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.") (internal quotes omitted).

Circuit employs the "least sophisticated consumer" standard,[18] and the defendant has given the Court no reason to believe any different measure of materiality applies. The defendant has not addressed materiality under the appropriate standard, but it is not difficult to conclude that the least sophisticated consumer would find the debt collector's lack of intention to prove its claim important to her decision whether to oppose its lawsuit.[19]

In its reply brief, the defendant argues that the filing of a collection action does not constitute an implied representation that the plaintiff intends to prove its case at trial. (Doc. 18 at 1-5). District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.[20] The defendant suggests its argument is timely because it responds to assertions made in the plaintiff's brief. (*Id.* at 1). But the complaint explicitly alleges that the defendant violated the Act because, "by bringing and maintaining its collection lawsuit, [it] represented to Plaintiff … that it

---

[18] *See LeBlanc*, 601 F.3d at 1195 ("threat" under Section 1692e(5)); *id.* at 1201 (Section 1692f); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177-78 (11th Cir. 1985) (Section 1692e(10)); *Hepsen v. Resurgen Capital Services, LP*, 383 Fed. Appx. 877, 881 (11th Cir. 2010) (Section 1692e(2)(A)).

[19] Whether the plaintiff would have acted differently had he known the truth might go to his reliance (or to the reasonableness of his reliance) on the representation, but the defendant has neither made such an argument nor shown that these are elements of a claim under the Act.

[20] *See Park City Water Authority v. North Fork Apartments, L .P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008).

intended to prove its claims." (Doc. 1 at 21).[21]  The mere fact that the plaintiff repeated this allegation in his brief does not make the assertion a new one so as to permit the defendant to challenge it for the first time in a reply brief.

### D. Compulsory Counterclaim.

"[F]ailure to assert a compulsory counterclaim bars the assertion of that claim in another action."  *Alabama Insurance Guaranty Association v. Southern Alloy Corp.*, 782 So. 2d 203, 206 (Ala. 2000) (internal quotes omitted).  The defendant argues that, pursuant to Alabama Rule of Civil Procedure 13(a), the plaintiff's claims under the Act were compulsory counterclaims in its collection action, such that the plaintiff's failure to assert them therein bars him from doing so now.  (Doc. 13 at 21-23).

The defendant characterizes the plaintiff's claims under the Act as being for "abuse of process."  (Doc. 13 at 21-22).  It believes itself justified in doing so because the complaint alleges that the defendant's conduct, in addition to violating several express provisions of the Act, "was an abuse of process."  (Doc. 1 at 23).  The defendant does not explain how this isolated use of the term supports characterizing the entirety of the claim as sounding in abuse of process.

Nor does the defendant identify any Alabama case ruling an abuse of process claim to be a compulsory counterclaim.  Instead, it cites a sister court's observation that "[t]he authorities have split on the question whether an abuse-of-process counterclaim is a compulsory counterclaim in the action which is allegedly abusive," *Walker v. THI*, 803 F. Supp. 2d 1287, 1301 (D.N.M. 2011), and it invites the Court to follow *Walker* by ruling such a counterclaim to be compulsory.  (Doc. 13 at 22-23).  But *Walker* was a federal case evaluating Federal Rule of Civil Procedure 13(a), and

---

[21] The defendant at all relevant times was aware of this allegation, since it quoted this portion of the complaint in its principal brief and summarized it as "alleg[ing] that Midland's act of filing the collection lawsuit was an implied representation that Midland intended to prove its claims …."  (Doc. 13 at 19).

the defendant has not endeavored to show that Alabama would employ the same analysis or a comparable one.

Finally, "[i]mplicit within this requirement [of Rule 13(a)], however, is the *knowledge* that one has a claim against the opposing party. Certainly Rule 13(a) cannot be construed to require a party to file as a compulsory counterclaim a claim which it does not know it has." *Sho-Me Motor Lodges, Inc. v. Jehle-Slauson Construction Co.*, 466 So. 2d 83, 90 (Ala. 1985) (emphasis in original). "We construe *Sho-Me* as requiring actual knowledge of a claim; thus, [the plaintiff's] constructive notice of her claim, would not be sufficient." *Downing v. Halcyon Oaks Homeowners Association, Inc.*, 96 So. 3d 818, 826 (Ala. Civ. App. 2012).

The defendant does not cite *Sho-Me* or *Downin*g, but it nevertheless recognizes that it must show the plaintiff was aware, during the collection action, of an abuse-of-process claim. The defendant maintains the plaintiff "cannot contend that he was unaware of his 'claim' in state court: according to his theory, the violation occurred the moment Midland filed the collection lawsuit." (Doc. 13 at 22-23). This is a non sequitur. That the defendant may have violated the Act (by pursuing the suit with no intent to obtain evidence or prove its claims and thus with knowledge it could not do so) does not establish that the plaintiff, while the suit continued, was aware of the defendant's secret plan. The plaintiff denies any such awareness, (Doc. 17 at 29), and the defendant has not shown the contrary.

## II. State Claims.

### A. Invasion of Privacy.[22]

Alabama recognizes four forms of invasion of privacy:

---

[22] The *Bandy* Court discerned in the plaintiff's complaint a federal cause of action for invasion of privacy. 2013 WL 210730 at *10. Neither the plaintiff nor the defendant argues that any such claim is presented in this substantively identical complaint. The Court construes Count Two's references to the Act and to the Gramm-Leach-Bliley Act as intended only to point out a federal acknowledgment that debtors have privacy rights, not as an assertion that a federal cause of action for invasion of privacy exists or is pressed.

(1) intruding into the plaintiff's physical solitude or seclusion;
(2) giving publicity to private information about the plaintiff that
violates ordinary decency; (3) putting the plaintiff in a false, but not
necessarily defamatory, position in the public eye; or (4) appropriating some
element of the plaintiff's personality for a commercial use.

*Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003) (internal quotes omitted).
Count Two alleges that the defendant "interfered, physically or otherwise, with the
solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by
repeatedly and unlawfully attempting to collect a debt that is not owed by Plaintiff."
(Doc. 1 at 24-25). The complaint identifies the conduct of the defendant supporting
this claim as "continually calling and mailing Plaintiff and filing its collection lawsuit
against Plaintiff." (*Id*. at 25). The parties do not address which prong or prongs of
the tort are implicated by the complaint.

The mere efforts of a creditor … to collect a debt cannot without more
be considered a wrongful and actionable intrusion. A creditor has and must
have the right to take reasonable action to pursue his debtor and collect his
debt. But the right to pursue the debtor is not a license to outrage the debtor.
… [The Ohio courts have ruled] that the debtor has a cause of action for
injurious conduct on the part of the creditor which exceeds the bounds of
reasonableness. We approve this statement.

*Norris v. Moskin Stores, Inc*., 132 So. 2d 321, 323 (Ala. 1961).

In the context of a creditor's collection efforts, the right to be free from the
invasion of one's privacy "has been characterized as … the wrongful intrusion into
one's private activities in such a manner as to outrage or cause mental suffering,
shame or humiliation to a person of ordinary sensibilities …." *Jacksonville State
Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985) (internal quotes omitted). The
defendant posits that its alleged conduct "do[es] not rise to the level of 'outrageous'
conduct required to state a claim for invasion of privacy," (Doc. 13 at 24), but it offers
only its ipse dixit, with no analysis or citation to relevant authority. The defendant
does not, for example, acknowledge *Barnwell*, in which the Court ruled that
"[t]wenty-eight to thirty-five phone calls to one's home and place of employment fall

20

within the realm of a 'systematic campaign of harassment,' a tactic admonished by this court in *Norris*," and which further ruled that "fraudulently altering the terms of a security instrument in order to attempt to collect a debt flies in the face of reasonableness, public policy and the law," so as to support a jury question as to whether the creditor invaded the debtor's privacy. *Id*. at 866. The Court will not develop or support an argument on the defendant's behalf.

Changing tacks, the defendant argues that the complaint's allegations do not satisfy the requirements of Rule 8(a)(2) as expounded by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and thus fail to state a claim. (Doc. 13 at 3-4, 24-25). As noted, Count Two alleges that the defendant invaded the plaintiff's privacy "by continually calling and mailing Plaintiff and filing its collection lawsuit against Plaintiff." (Doc. 1 at 25). The preliminary factual allegations echo that the defendant "continually attempt[ed] to contact Plaintiff by phone and mail." (*Id*. at 16).

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Twombly*, 550 U.S. at 555. "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not be detailed,

"[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*. That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

The defendant relies on *Polk v. Law Office of Curtis O. Barnes*, 2010 WL 1994093 (M.D. Ala. 2010). The complaint in *Polk* alleged that the plaintiff received a call on his cell phone, which "was not the first" call he had received about the debt. *Id*. at *1. The complaint also alleged that the defendant had called the plaintiff's employer. *Id*. The Court noted that "absent from the Complaint are allegations from which the Court could ascertain the number, frequency or pattern of calls from Defendant's agents or the content of the calls which he contends were intended to harass or intimidate him." *Id*. at *2. The Court thus ruled that the claim for invasion of privacy did not comply with Rule 8. *Id*. The defendant does not explain how *Polk* supports its position, and the Court concludes it does not, given the differences in the pleadings.

First, the complaint in *Polk* identified as few as three telephone calls. The complaint herein does not quantify the number of calls and mailings to the plaintiff, but it does describe this conduct as "continua[l]," a factual allegation that necessarily

denotes a high number of incidents.[23]  As noted, the Alabama Supreme Court has found 28 to 35 phone calls enough to support an invasion of privacy claim (without establishing this as a minimum threshold), so an allegation of "continua[l]" calls and mailings supplies factual content rendering plausible a claim that the defendant invaded the plaintiff's privacy.

Moreover, the Alabama Supreme Court has indicated that improper manipulation of the legal system to obtain payment may support a claim of invasion of privacy against a debt collector.  *See Barnwell*, 481 So. 2d at 865 (fraudulent alteration of a security instrument).  Here, the plaintiff has alleged such manipulation, in the form of filing and pursuing litigation without evidence to prove the claim and without intention to obtain such evidence (and, thus, with knowledge the claim cannot be proved).  The complaint alleges this conduct in detail, flush with factual allegations. [24]

The defendant's argument is limited to one conclusory sentence, plus a quote from *Polk* and another from the complaint herein.  (Doc. 13 at 24-25).  In light of the foregoing discussion, such pro forma argument is insufficient to persuade the Court to accept the defendant's position.

### B.  Malicious Prosecution.

The defendant's only argument is that its proceeding to trial "contradicts the essential state of mind element" of this claim, *i.e.*, malice.  According to the defendant, the complaint's acknowledgment that the case proceeded to trial disproves the defendant's malice.  (Doc. 13 at 28-30).

---

[23] American Heritage Dictionary 397 (5th ed. 2011) (defining "continual" as "[r]ecurring regularly or frequently" or "[n]ot interrupted; steady"); Webster's New College Dictionary 250 (3rd ed. 2008) (same).

[24] As in *Polk*, the instant complaint does not specify the pattern or content of the communications from the defendant, but this is not material, since the defendant has not explained how the facts that are alleged fail to satisfy the plausibility standard.


The Court is unable to follow the defendant's reasoning. The defendant neither defines "malice" nor explains how the mere act of appearing at trial with no ability to prove its case – an inability it allegedly was aware of at all times – negates malice. Certainly it cites no authority for this proposition.

Moreover, "[i]t is well established that for purposes of a malicious-prosecution claim, the element of malice may be inferred from the lack of probable cause ...." *Ex parte Tuscaloosa County*, 796 So. 2d 1100, 1107 (Ala. 2000). Without challenging the element of lack of probable cause, the defendant cannot successfully challenge the element of malice.

### C. Abuse of Process.

The defendant's argument concerning this claim is similar. An element of abuse of process is an ulterior purpose, and the defendant argues that its appearance at trial negates the ulterior purpose of coercing settlement or default judgment. (Doc. 13 at 28-30). The defendant appears to believe that, because its alleged ulterior purpose was not realized, it could not have possessed such a purpose. The defendant cites no authority for this proposition, and the Court cannot accept it without a stronger basis than the defendant's ipse dixit.[25]

### D. Negligence/Wantonness/Intentional Conduct.

Count Four alleges that the defendant acted negligently, wantonly and/or intentionally in attempting to coerce payment from the plaintiff. (Doc. 1 at 27-28). The defendant's only argument is that "nothing in Count Four specifies Midland's actual 'conduct,' other than the act of filing the underlying collection action." (Doc. 13 at 26). Count Four, however, incorporates the previous allegations of the complaint and therefore encompasses all allegations concerning the defendant's pre-lawsuit informal collection efforts as well as all allegations concerning the

---

[25] The defendant imports its compulsory counterclaim argument to the plaintiff's claim for abuse of process. (Doc. 13 at 23 n.5). It fails for reasons set forth in Part I.D.

defendant's actions, inactions and intentions concerning the collection action.  The defendant has identified nothing that requires dismissal of this claim.

### E.  Negligent/Wanton/Intentional Hiring/Supervision/Etc.

Count Three alleges that the defendant negligently, wantonly and/or intentionally hired, trained, retained and/or supervised its debt collection employees and its agents, who violated the law as described in the complaint.  (Doc. 1 at 26-27).

"[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents."  *Flying J Fish Farm v. Peoples Bank*, 12 So. 3d 1185, 1196 (Ala. 2008) (internal quotes omitted).  The defendant argues there is no underlying wrongful conduct, (Doc. 13 at 25-26), but, as discussed in Parts I and II.A-D, the wrongful conduct made the basis of all the plaintiff's tort and statutory claims remains part of this lawsuit.  With one exception, discussed below, the defendant does not offer to explain how, given the survival of these claims, wrongful conduct by its employees and agents could have been negated.

The defendant next argues that the act of its collection law firm in filing the collection action could not constitute an underlying wrong, because "a claim of negligent prosecution of a civil action is not a cognizable tort claim in this state."  *Ex parte State Farm Mutual Automobile Insurance Co.*, 924 So. 2d 706, 711 (Ala. 2005). (Doc. 13 at 26-27).  Yes, but malicious prosecution, abuse of process, and invasion of privacy in connection with a civil action are all cognizable tort claims, all can constitute an underlying wrong, and all remain in play herein.

Finally, the defendant argues that it cannot be held liable for the actions taken by its collection law firm, because that firm is an independent contractor.  (Doc. 13 at 27-28).  The complaint, however, alleges that the firm is the defendant's agent.  The defendant does not acknowledge this allegation or explain how the Court can ignore it.[26]  The defendant appears to believe that an attorney can never be the agent of his

---

[26] The defendant raises no argument that facts suggesting agency must be pleaded under *Twombly* or that the complaint fails to allege such facts.

client, but the only Alabama case on which it relies explored the facts at length before determining that the attorney at issue was an independent contractor rather than an employee. *Martin v. Lawrence County*, 628 So. 2d 652, 654 (Ala. Civ. App. 1993).[27] "The test for agency [as opposed to independent contractor] is whether the alleged principal has retained a right of control over the actions of the alleged agent." *Dickinson v. City of Huntsville*, 822 So. 2d 411, 416 (Ala. 2001) (internal quotes omitted). The defendant has neither examined the factors informing this analysis nor explained how it may be permitted to do so on a threshold motion for judgment on the pleadings.

## CONCLUSION

For the reasons set forth above, the defendant's motion for judgment on the pleadings is **denied**.

DONE and ORDERED this 7th day of February, 2013.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[27] Of the three cases from other jurisdictions on which the defendant relies, two involve the special situation of an insurer's liability for the negligence of the lawyer or firm it has selected to represent its insured, and they are limited to that context. The third may or may not support the proposition for which it is offered, but the defendant has not established that Alabama embraces a similar prophylactic rule.